UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WAYNE JOHNSON, | No. 2:20-cv-0967 WBS DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| AMY NELSON, | |
| Defendant. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges that defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Presently before the court is defendant's fully briefed motion for summary judgment. (ECF Nos. 56, 62, 65.) For the reasons set forth below, the undersigned will recommend that the motion for summary judgment be granted.

## BACKGROUND

**I.    Relevant Procedural History**

Plaintiff initiated this action with the filing of the original complaint. (ECF No. 1.) The undersigned screened and dismissed the original and first amended complaints for failure to state a claim. (ECF Nos. 9, 13.) The undersigned determined that plaintiff's second amended complaint stated a potentially cognizable Eighth Amendment claim against defendant Amy

1    Nelson.  Defendant was served (ECF No. 19), filed an answer (ECF No. 23), and this action was

2    referred to the court's Post-Screening ADR (Alternative Dispute Resolution) Project (ECF No.

3    26).  Defendant moved to opt out of the ADR project.  (ECF No. 29.)  The motion was granted

4    (ECF No. 31) and the court issued a discovery and scheduling order (ECF No. 32).

5        Defendant filed the instant motion for summary judgment on August 26, 2022.  (ECF No.

6    56.)  Plaintiff filed a motion for a sixty-day extension of time to file an opposition to defendant's

7    summary judgment motion (ECF No. 60) concurrently with an opposition to the summary

8    judgment motion.  Therein, plaintiff argued that the court should deny the motion because he did

9    not receive the motion by the filing deadline.  (ECF No. 59.)  The undersigned construed the

10   opposition as a motion to deem defendant's summary judgment motion as untimely and it was

11   denied.  (ECF No. 61.)  Plaintiff's motion for an extension of time was granted.  (Id.)  Thereafter,

12   plaintiff filed a document captioned "Declaration in Opposition to Defendant's Motion for

13   Summary Judgment."  (ECF No. 62.)  The court will construe this filing as plaintiff's opposition

14   to defendant's motion for summary judgment.  Defendant has filed a reply.  (ECF No. 65.)

15       **II.    Allegations in the Complaint**

16       The events giving rise to the claim occurred while plaintiff was incarcerated by the

17   California Department of Corrections and Rehabilitation ("CDCR") at Mule Creek State Prison

18   ("MCSP").  (ECF No. 14 at 2.)  Plaintiff has identified registered nurse ("RN") Amy Nelson as

19   the sole defendant in this action.  (Id.)

20       Plaintiff alleges that he was initially seen by Nelson on June 11, 2019, for "persistent knee

21   pain and complications."  (Id. at 3.)  Nelson prescribed Tylenol to treat his pain.  "[A]fter a period

22   of time, plaintiff's pain and complications began to slightly increase."  Plaintiff submitted several

23   requests for medical services between June 27, 2019, and October 29, 2019.  Nelson saw plaintiff

24   five times during this period.  At each appointment plaintiff conveyed that his pain was increasing

25   and each time Nelson "delayed/refused access to the progression of medical care."  (Id. at 4.)  As

26   a result of the delay plaintiff's knee got worse.  Walking short distances and bending his knee

27   became painful and difficult.

28   ////

1      Plaintiff was later seen by a different nurse who referred plaintiff to his primary care

2 provider ("PCP").  (Id.)  Plaintiff's PCP referred plaintiff to a specialist who "determine[d] that

3 the delays" caused so much deterioration that plaintiff needed a complete knee replacement.

## MOTION FOR SUMMARY JUDGMENT

I.     **The Parties' Briefing**

    A.  **Defendant's Motion for Summary Judgment**

Defendant argues she is entitled to summary judgment because she provided appropriate medical treatment, plaintiff's disagreement with the course of treatment is not sufficient to show a violation of his constitutional rights, and she is entitled to qualified immunity.  (ECF No. 56 at 13-20.)

    B.  **Plaintiff's Opposition**

Plaintiff argues defendant "did not provide appropriate medical treatment" and delayed further treatment causing "excessive dangerous risk to plaintiff's health."  (ECF No. 62 at 4.)  Plaintiff further alleges that he was seen by defendant on dates in addition to those put forth in the motion for summary judgment.  (Id.)  Plaintiff contests the veracity of statements made by defendant, K Paraso's statements.  (Id. at 5-6.)

    C.  **Defendant's Reply**

In the reply, defendant argues that plaintiff fails to raise a genuine dispute of any material fact, plaintiff cannot show he was harmed, his disagreement with the treatment is not sufficient to show deliberate indifference.  (ECF No. 65 at 2-8.)

II.    **Legal Standards**

    A.  **Summary Judgment under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including

3

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

////

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the

facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

### B. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prisoner officials responded to the serious medical need with deliberate indifference. See Id. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison

////

6

officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. Of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### III. Material Facts

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a) along with their motion for summary judgment. (ECF No. 56-3.) Plaintiff's filing in

7

opposition fails to strictly comply with Local Rule 260(b).  (ECF No. 62 at 11-14.)  Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."

The court is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However, only those assertions in the opposition that have evidentiary support in the record will be considered.

Plaintiff has identified assertions in the motion for summary judgment that he disagrees with in his opposition.  (ECF No. 62 at 10-14.)  However, his disputed facts do not appear to match up to defendant's statement of undisputed facts (ECF No. 56-3).  In light of plaintiff's pro se status, the court has reviewed plaintiff's filings, including his supplemented statement of undisputed facts, in an effort to discern whether he denies any material fact asserted in the defendant's DSUF.

**A.  Undisputed Facts**

At all times relevant to the claim plaintiff was a state prisoner in CDCR custody housed at MCSP.  (DSUF (ECF No. 56-3) at ¶ 1; Pl.'s Compl. (ECF No. 14) at 2.)  Defendant, A. Nelson, is a registered nurse employed at MCSP during the relevant time period.  (DSUF (ECF No. 56-3) at ¶ 2; Pl.'s Compl. (ECF No. 14) at 2.)

Defendant saw plaintiff relative to complaints of left knee pain between June 12, 2019, and November 22, 2019.  (DSUF (ECF No. 56-3) at ¶ 2.)  Defendant also saw plaintiff on two occasions for issues unrelated to his left knee, on December 17, 2019, and December 12, 2020, respectively.  (DSUF (ECF No. 56-3) at ¶3.)

////

Defendant saw plaintiff on June 12, 2019, regarding his left knee. (DSUF (ECF No. 56-3) at ¶ 4.) Nelson maintains that upon exam plaintiff's knee was not swollen, he had full range of motion, and there were no abnormalities. (Id.) Nelson offered to prescribe pain medications consistent with RN protocol for joint pain. (Id.) Plaintiff refused indicating he had pain medication in his cell. (Id.) Plaintiff also refused ice packs and stretching exercises offered by defendant. (Id.)

Defendant next saw plaintiff on June 19, 2019. (DSUF (ECF No. 56-3) at ¶ 6.) Plaintiff again reported swelling in his left knee. (DSUF (ECF No. 56-3) at ¶ 6.) Plaintiff requested to be seen by a doctor and to have his left knee drained. (DSUF (ECF No. 56-3) at ¶ 6.) Plaintiff had slight swelling to the kneecap, but plaintiff had full range of motion and defendant could not feel any fluid. (DSUF (ECF No. 56-3) at ¶ 6.) Defendant "advised Plaintiff not to play basketball, to take Tylenol for pain, wrap the area with an ace wrap, elevate the leg, and apply an ice pack." (DSUF (ECF No. 56-3) at ¶ 6.)

RN Bartel saw plaintiff on June 28, 2019, regarding left knee pain. (DSUF (ECF No. 56-3) at ¶ 8.) Plaintiff had swelling, full range of motion, and no additional abnormalities. (DSUF (ECF No. 56-3) at ¶ 8.) RN Bartel referred plaintiff to be seen by a primary care physician. (DSUF (ECF No. 56-3) at ¶ 8.)

Plaintiff saw primary care physician Hla on July 9, 2019. (DSUF (ECF No. 56-3) at ¶ 9.) Plaintiff stated he had pain and swelling in his left knee. (DSUF (ECF No. 56-3) at ¶ 9.) He requested an MRI, to have his knee drained, and be referred to an orthopedist. (DSUF (ECF No. 56-3) at ¶ 9.) Dr. Hla's exam showed no fluid in the knee joint, no pain to the touch, and plaintiff had full range of motion. (DSUF (ECF No. 56-3) at ¶ 9.) Additionally, plaintiff had a normal gait, was not in distress, and could perform activities of daily living. (DSUF (ECF No. 56-3) at ¶ 9.) Dr. Hla ordered an x-ray and advised plaintiff to continue taking Tylenol. (DSUF (ECF No. 56-3) at ¶ 9.)

An x-ray of plaintiff's left knee was taken on July 11, 2019. (DSUF (ECF No. 56-3) at ¶ 10.) The x-ray "showed degenerative joint disease not significantly changed from" the year prior. (DSUF (ECF No. 56-3) at ¶ 10.)

1       Defendant saw plaintiff on July 22, 2019, for reasons unrelated to his left knee.  (DSUF
2  (ECF No. 56-3) at ¶ 11.)  Plaintiff saw his primary care physician Dr. Ramos on July 25, 2019.
3  (DSUF (ECF No. 56-3) at ¶ 12.)  Dr. Ramos examined plaintiff's knee and observed trace
4  swelling, good mobility, and no joint line tenderness.  (DSUF (ECF No. 56-3) at ¶ 12.)  He noted
5  that the "x-ray showed only mild osteoarthritis with excellent joint space, no significant joint
6  space narrowing."  Dr. Ramos ordered a steroid injection for plaintiff's left knee as well as a
7  nursing follow-up.  (DSUF (ECF No. 56-3) at ¶ 12.)

8       Dr. Hla gave plaintiff a steroid injection on July 29, 2019.  (DSUF (ECF No. 56-3) at ¶
9  13.)  Defendant saw plaintiff for a post-injection follow-up appointment on August 1, 2019.
10  (DSUF (ECF No. 56-3) at ¶ 14.)  Plaintiff had full range of motion and no swelling.  (DSUF
11  (ECF No. 56-3) at ¶ 14.)  Plaintiff was scheduled for an appointment with his primary care
12  physician, "but refused the appointment because he wanted to see Dr. Ramos instead of Dr.
13  Weiss."  (DSUF (ECF No. 56-3) at ¶ 14.)  Dr. Weiss also observed plaintiff walk into the clinic
14  without distress before refusing his appointment.  (DSUF (ECF No. 56-3) at ¶ 14.)

15       Defendant saw plaintiff on August 7, 2019.  (DSUF (ECF No. 56-3) at ¶ 15.)  Plaintiff
16  requested that he be scheduled to see Dr. Ramos instead of Dr. Weiss.  (DSUF (ECF No. 56-3) at
17  ¶ 15.)  Defendant advised plaintiff that "he could not pick and choose his physician."  (DSUF
18  (ECF No. 56-3) at ¶ 15.)  Plaintiff indicated that he would wait for his next appointment with Dr.
19  Ramos.  (DSUF (ECF No. 56-3) at ¶ 15.)

20       Plaintiff saw Dr. Ramos on September 18, 2019, where he reported knee pain and
21  swelling.  (DSUF (ECF No. 56-3) at ¶ 16.)  Upon exam, Dr. Ramos observed "mild lateral joint
22  line tenderness, mild swelling, full range of motion, and pain with squatting."  (DSUF (ECF No.
23  56-3) at ¶ 16.)  Additionally, because the cortisone injection had only modest benefit, Dr. Ramos
24  requested that plaintiff be seen by an orthopedic specialist.  (DSUF (ECF No. 56-3) at ¶ 16.)
25  ////
26  ////
27  ////
28  /////

On September 14, 2019, plaintiff was seen at the TTA[1] by Dr. Snook for "left lower leg swelling." (DSUF (ECF No. 56-3) at ¶ 17.) After evaluation, Dr. Snook sent plaintiff for an "ultrasound at San Joaquin General Hospital to rule out deep vein thrombosis." (DSUF (ECF No. 56-3) at ¶ 17.) "The ultrasound was normal, and plaintiff returned to MCSP the same day." (DSUF (ECF No. 56-3) at ¶ 17.)

Defendant saw plaintiff the following day, September 25, 2019, pursuant to plaintiff's request for a lay-in[2] from work and ice. (DSUF (ECF No. 56-3) at ¶ 18.) Upon exam, defendant noted that plaintiff's range of motion was limited with swelling. (DSUF (ECF No. 56-3) at ¶ 18.) Defendant issued an ice pack, a lay-in, and advised plaintiff to elevate, continue taking Tylenol, and follow up with his primary care physician. (DSUF (ECF No. 56-3) at ¶ 18.)

Plaintiff saw primary care physician, Dr. Hla the following day, September 26, 2019. (DSUF (ECF No. 56-3) at ¶ 19.) Plaintiff requested that "his mobility vest be reinstated, pain medication, and to be medically unassigned from work." (DSUF (ECF No. 56-3) at ¶ 19.) Dr. Hla's exam showed minimal swelling that did not impact plaintiff's range of motion. (DSUF (ECF No. 56-3) at ¶ 19.) Dr. Hla denied plaintiff's requests, advised plaintiff that he had an upcoming appointment with an orthopedic specialist, and recommended home stretching exercises. (DSUF (ECF No. 56-3) at ¶ 19.)

Plaintiff also saw defendant on September 26, 2019. (DSUF (ECF No. 56-3) at ¶ 20.) He requested that his prescription for gabapentin be renewed, a mobility vest, and to be medically unassigned from work. (DSUF (ECF No. 56-3) at ¶ 20.) Defendant's exam showed that he had a steady gait, full range of motion, and no difficulty getting on or off the exam table. (DSUF (ECF No. 56-3) at ¶ 20.) Defendant referred plaintiff to his primary care physician. (DSUF (ECF No. 56-3) at ¶ 20.)

---

[1] The TTA is also referred to as a "Triage and Treatment Area," Tomasini v. Duncan, No. 2:18-cv-3020 MCE CKD P, 2022 WL 184003 at *3, (E.D. Cal. Jan. 20, 2022), and "functions like an urgent care at the prison." (DSUF (ECF No. 56-3) at ¶ 17.)

[2] A lay-in is described by defendant as a "written authorization from medical staff" allowing an inmate to remain in their cell when they would otherwise be required to leave for activities such as work. (DSUF (ECF No. 56-3) at ¶ 11.)

11

Plaintiff was seen by Dr. Ramos on October 1, 2019, relative to multiple issues, including plaintiff's request that his gabapentin prescription be renewed. (DSUF (ECF No. 56-3) at ¶ 21.) Ramos "noted Plaintiff's long-standing history of abnormal pain behavior including alleged drug diversion, narcotic seeking, gabapentin seeking, and disability seeking." (DSUF (ECF No. 56-3) at ¶ 21.) Upon exam Ramos determined plaintiff's knee showed no fluid or swelling and he had full range of motion. (DSUF (ECF No. 56-3) at ¶ 21.) Ramos advised plaintiff that he had an upcoming appointment with an orthopedic specialist. (DSUF (ECF No. 56-3) at ¶ 21.) Ramos did not think plaintiff was a candidate for surgery because his presentation was not consistent with a meniscus tear and his arthritis was not severe enough to require surgery. (DSUF (ECF No. 56-3) at ¶ 21.)

Plaintiff was seen by Dr. Casey for an orthopedic consult on October 22, 2019. (DSUF (ECF No. 56-3) at ¶ 22.) Dr. Casey recommended an MRI. (DSUF (ECF No. 56-3) at ¶ 22.) On October 30, 2019, plaintiff saw RN Bartel who noted that while plaintiff's left knee was enlarged, he had full range of motion, including flexion and extension, with increased pain. (DSUF (ECF No. 56-3) at ¶ 23.) Plaintiff requested a lay-in and Bartel provided a three-day lay-in. (DSUF (ECF No. 56-3) at ¶ 23.)

Defendant saw plaintiff on November 8, 2019, relative to left knee pain. (DSUF (ECF No. 56-3) at ¶ 24.) Plaintiff requested an ice pack and a lay-in. (DSUF (ECF No. 56-3) at ¶ 24.) Plaintiff had limited range of motion but was able to flex and extend his knee without difficulty. (DSUF (ECF No. 56-3) at ¶ 24.) Defendant gave plaintiff an ice pack and a lay-in. She also asked plaintiff if he would like to reschedule an MRI of his low back which plaintiff had refused on October 25, 2019. (DSUF (ECF No. 56-3) at ¶ 24.) Plaintiff expressed his desire to reschedule, and defendant notified his primary care physician. (DSUF (ECF No. 56-3) at ¶ 24.)

Defendant's last appointment with plaintiff occurred on November 22, 2019. (DSUF (ECF No. 56-3) at ¶ 25.) Plaintiff requested a date for his MRI and a lay-in until he had knee surgery. (DSUF (ECF No. 56-3) at ¶ 25.) Plaintiff had not been recommended for surgery when he was seen by defendant on November 22, 2019. (DSUF (ECF No. 56-3) at ¶ 25.) Plaintiff reported pain when bending his left knee and while walking. (DSUF (ECF No. 56-3) at ¶ 25.)

1   Plaintiff did not have swelling, walked without a limp, and was capable of getting on and off the
2   exam table without difficulty.  (DSUF (ECF No. 56-3) at ¶ 25.)  Defendant did not see a date set
3   for plaintiff to have an MRI, so she contacted Dr. Ramos.  (DSUF (ECF No. 56-3) at ¶ 25.)
4   Defendant denied plaintiff a lay-in because she did not find any basis to give plaintiff a lay-in.
5   (DSUF (ECF No. 56-3) at ¶ 25.)

6        An MRI of plaintiff's left knee was conducted on February 12, 2020.  (DSUF (ECF No.
7   56-3) at ¶ 26.)  "The MRI showed moderate osteoarthritis, a degenerative condition."  (DSUF
8   (ECF No. 56-3) at ¶ 26.)  Dr. Ramos reviewed the results of the MRI with plaintiff on March 9,
9   2020.  (DSUF (ECF No. 56-3) at ¶ 27.)  Dr. Ramos requested that plaintiff see an orthopedic
10  specialist to follow-up, but the appointment was cancelled due to the COVID-19 pandemic.
11  (DSUF (ECF No. 56-3) at ¶ 27.)

12       Dr. Ramos saw plaintiff several times thereafter.  (DSUF (ECF No. 56-3) at ¶ 28.)  Dr.
13  Ramos explained that elective non-emergency surgeries could not occur because of the pandemic
14  and plaintiff did not have a surgical recommendation.  (DSUF (ECF No. 56-3) at ¶ 28.)  Dr.
15  Ramos offered a second steroid injection, but plaintiff refused.  (DSUF (ECF No. 56-3) at ¶ 28.)
16  Dr. Ramos requested that plaintiff be seen for an orthopedic consult in October 2020 and
17  discussed deferring potential surgery in light of his ulcerative colitis and immunosuppression.
18  (DSUF (ECF No. 56-3) at ¶ 28.)  At this time plaintiff was able to ambulate without an assistive
19  device and agreed with Dr. Ramos.  (DSUF (ECF No. 56-3) at ¶ 28.)  Plaintiff contracted
20  COVID-19 "at the end of November 2020."  (DSUF (ECF No. 56-3) at ¶ 28.)

21       Plaintiff was seen for a consultation with Dr. Casey on January 26, 2021.  (DSUF (ECF
22  No. 56-3) at ¶ 29.)  Upon review of the imaging and because prior conservative treatment had
23  failed, Dr. Casey recommended a total knee replacement.  (DSUF (ECF No. 56-3) at ¶ 29.)
24  Plaintiff had surgery on July 19, 2021.  (DSUF (ECF No. 56-3) at ¶ 29.)

25      **B.  Disputed Facts**

26       The parties disagree about the facts surrounding the exact timing of the medical visits,
27  whether plaintiff was playing basketball during the relevant time period, and whether plaintiff's
28  knee was swollen during the relevant time period.  However, as set forth below, the court does

1    not find these disputes material in determining whether defendant rendered adequate medical
2    care.

3          Plaintiff alleges he was seen by defendant on: (1) June 17, 2019; (2) June 27, 2019; (3)
4    September 23, 2019; and (4) October 29, 2019.  (ECF No. 6 at 5.)  However, defendant's
5    declaration and the records filed along with the motion for summary judgment, indicate that
6    defendant saw plaintiff relative to complaints of left knee pain on: (1) June 12, 2019 (ECF No.
7    56-5 at 10-18); (2) June 19, 2019 (ECF No. 56-5 at 22-31); (3) August 1, 2019 (ECF No. 56-5 at
8    72-82); and (4) August 7, 2019 (ECF No. 56-5 at 84-93); (5) September 25, 2019 (ECF No. 56-5
9    at 124-136); (6) September 26, 2019 (ECF No. 56-5 at 138-152) (7) November 8, 2019 (ECF No.
10   56-5 at 169-180); (8) November 22, 2019 (ECF No. 56-5 at 182-191).  Where opposing parties
11   tell two different stories, on of which is "blatantly contradicted" by the record so that no
12   reasonable jury could believe it, the court should not adopt that version of the facts.  Scott v.
13   Harris, 550 U.S 372, 380 (2007).

14         Plaintiff claims that defendant alleges in the motion for summary judgment that she only
15   saw plaintiff relative to knee pain twice, on June 12, 2019, and November 22, 2019.  (ECF No. 62
16   at 5.)  However, it appears that plaintiff may have misread one of the entries in defendant's
17   statement of undisputed facts which states that "[s]ince November 22, 2019, defendant saw
18   plaintiff twice for medical visits *unrelated* to left knee pain."  (DSUF (ECF No. 56-3) at ¶ 3
19   (emphasis added).)  It is clear from defendant's motion for summary judgment, and the
20   accompanying exhibits, that defendant saw plaintiff relative to left knee complaints on more than
21   two occasions between June 12, 2019, and November 22, 2019.

22         Plaintiff disputes the allegation, made by defendant and other prison medical officials (see
23   DSUF (ECF No. 56-3) at ¶¶ 5, 7, 12), that they observed him playing basketball on several
24   occasions.  (ECF No. 62 at 10.)  However, defendant points out in the reply, that plaintiff
25   acknowledged playing basketball on at least one occasion during the relevant time period during
26   his deposition.  (ECF No. 65 at 7.)  Plaintiff admitted that he would occasionally stand and shoot
27   baskets from a stationary position on the court.  (Plaintiff's Deposition, 128:1-6.)
28   ////

1       Plaintiff also disputes prison officials' assessments of his gait, range of motion, and ability
2  to get on and off the exam table between July 25, 2019 and November 8, 2019.  (ECF No. 62 at
3  11-12.)  In support of his contention, he has provided declarations from three fellow inmates.
4  Their statements indicate that they observed that plaintiff's knee was swollen.  (ECF No. 62 at 1-
5  3.)  However, their statements do contain specific dates they observed plaintiff with a swollen
6  knee.  Rather, they indicate that they observed this happening "for several months, all through to
7  March of 2020," (Id. at 1), "during the months of August, Sept[ember], Oct[ober] of 2019," (Id. at
8  2), and "late 2019-early 2020."  (Id. at 3.)

## IV.     Analysis

Plaintiff claims that defendant was deliberately indifferent because she failed to refer him for additional treatment by his primary care physician.  (ECF No. 62 at 8.)  Defendant argues that "the evidence shows Plaintiff was provided reasonable and prompt medical care at all time[s] and that no excessive risk of harm was ignored."  (ECF No. 56 at 14.)  Defendant further argues that her decisions "were consistent with RN protocols, and no further referrals or interventions were medically necessary, based on her objective findings."  (Id. at 15.)

Defendant has put forth evidence in the form of a declaration from Nurse Consultant for the California Correctional Health Care Services ("CCHCS"), RN K. Paraso.  (ECF No. 56-6.)  Therein, Paraso states that they are "familiar with the standard of care and skill ordinarily exercise by various nurses provide care in a correctional setting" and "the practices, policies, and procedures promulgated by the [CDCR] and CCHCS regarding the health care of inmates."  (ECF No. 56-6 at 2.)  Paraso's declaration and opinions were formed following review of plaintiff's "Complaint, the Court's Screening Order, and [their] analysis of [plaintiff's] medical records kept by CCHCS documenting the medical care provided to him."  (Id.)  Paraso opines that during the relevant time period, June 27 to October 29, 2019, plaintiff's allegation that defendant delayed or refused him access to medical care for his left knee is unsupported by the record.  (Id. at 9-10.)  During the relevant time period, plaintiff was "followed and treated by several primary care physicians" and "nursing staff, including [defendant], offered timely, appropriate medical

////

attention and care, and pursued a medically acceptable course of treatment within the applicable standard of care." (Id. at 10.)

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health.'" Toguchi, 391 F.3d at 1058 (citing Jackson v. McIntosh, 90 F.3d at 330, 332 (9th Cir. 1996)). The undisputed facts indicate that plaintiff was seen by defendant relative to complaints of knee pain on approximately 8 occasions between June 12, 2019, and November 22, 2019. During these visits, defendant offered plaintiff pain medication, ice, stretching exercises, and on at least one occasion, a lay-in. (DSUF (ECF No. 56-3) at ¶¶ 4, 6, 18, 24.) Between June 12, 2019, and November 22, 2019, plaintiff was also seen and treated by RN Bartell and Drs. Ramos, Weiss, and Hla. (DSUF (ECF No. 56-3) at ¶¶ 8, 9, 12, 13, 16, 17, 19, 21, 22, 23.) He also received an x-ray, a steroid injection, an ultrasound, and was referred to a specialist. (DSUF (ECF No. 56-3) at ¶¶ 10, 12, 13, 16, 17, 22.)

Plaintiff has not produced evidence indicating that defendant's treatment plan was medically unacceptable under the circumstances. Rather, plaintiff has put forth his own opinion to support his position. Shamburger v. Risenhoover, 471 Fed. Appx. 596, 597 (9th Cir. 2012) (affirming summary judgment where defendant-nurse allegedly failed to refer plaintiff to a doctor because plaintiff's disagreement with the nurse's chosen course of treatment was not sufficient to constitute deliberate indifference); Hunnicutt v. Cate, No. C 12-380 JST (PR), 2013 WL 4776527, at *5 (N.D Cal. Sept. 5, 2013) ("A nurse's failure to refer an inmate to a doctor is evidence of indifference to a serious medical need only when the inmate's symptoms or other objective evidence indicate that a doctor's care is required."); Washington v. Harrington, No. 1:11-cv-0848 MJS (PC), 2012 WL 3763964, at *5 (E.D. Cal. May 24, 2012) (finding no deliberate indifference where a nurse allegedly failed to refer prisoner to a doctor after providing care in response to complaints of difficulty breathing and coughing) aff'd, 549 Fed. Appx. 679 (9th Cir. 2013).

////

Additionally, that plaintiff was later referred for surgery, does not, on its own indicate that beginning with conservative treatment deprived plaintiff of adequate medical care. See Rodriguez v. Cate, 474 Fed. Appx. 614 (9th Cir. 2012) (affirming grant of summary judgment in favor of defendant doctor who pursued a conservative treatment plan because plaintiff's disagreement with medical opinion was not sufficient to constitute deliberate indifference); Sanchez, 891 F.2d at 242 ("A difference of medical opinion does not amount to a deliberate indifference to [plaintiff's] serious medical needs.").

While the treatment defendant rendered was not the treatment plaintiff would have preferred, plaintiff has produced only his own opinion, in support of his claim that it was medically unacceptable under the circumstances. Even taking as true plaintiff's version of events that his knee was swollen during the relevant time frame, plaintiff can show nothing more than a difference of opinion regarding the proper treatment. Accordingly, the undersigned will recommend that defendant's motion for summary judgment be granted.[3]

## CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 56) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

////

////

////

////

---

[3] Because this court finds summary judgment appropriate on the merits of plaintiff's claims, it need not reach the issue of qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

17

specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 6, 2023

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil.Rights/S/john0967.msj fr